UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |  |
|---|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) | CAUSE NO. 3:05-MD-527 RM (MDL-1700) THIS DOCUMENT RELATES TO ALL CASES |

**OPINION AND ORDER**

On December 20, 2006, this Court held an in-court hearing on three pending discovery matters. For the following reasons, Plaintiffs' first motion to compel is **DENIED IN PART** and **GRANTED IN PART** [Doc. No. 327], Plaintiffs' second motion to compel is **DENIED WITHOUT PREJUDICE** [Doc. No. 389], and Plaintiff's third motion to compel is **DENIED WITHOUT PREJUDICE** [Doc. No. 394].

**I.    PROCEDURE**

On August 10, 2005, this multidistrict litigation case was transferred to the Northern District of Indiana pursuant to 28 U.S.C. § 1407 to perform consolidated pretrial proceedings. Plaintiffs' main contention for many of their claims is that Fedex was treating them as independent contractors when they were actually employees. As a result, Plaintiffs seek a number of remedies that revolve around this issue including injunctive relief and damages. On November 15, 2005, this Court entered an initial scheduling order where, pursuant to the parties' consent, discovery on liability and damages was bifurcated.

The current disputes are discovery disputes. On August 8, 2006, Plaintiffs filed a motion to compel production of documents based on their requests numbered 22 and 63 from Defendant

FedEx Ground Package System Inc. (Fedex).  Request number 22 refers to materials relating to surveys and focus groups, and request number 63 refers to headcount materials.  On August 28, 2006, Fedex filed a response in opposition to Plaintiffs motion to compel.  On September 7, 2006, Plaintiffs filed a reply in support of their motion, and on September 14, 2006, Fedex filed a sur-reply.

On October 26, 2006, Plaintiffs filed their second motion to compel in which they seek to compel documents where portions have been unilaterally redacted by Fedex.  On November 13, 2006, Fedex filed its response in opposition to Plaintiffs' motion.  On November 28, 2006, Plaintiffs filed their reply.

On November 10, 2006, Plaintiffs filed their third motion to compel.  Plaintiffs seek to compel documents and testimony that it claims Fedex has improperly designated as privileged.  On December 8, 2006, Fedex filed a response in opposition to that motion, and on December 18, 2006, Plaintiffs filed their reply.

On December 20, 2006, this Court held an in-court hearing and heard arguments from counsel on all three motions.  This Court may rule on these motions pursuant to its referral order and 28 U.S.C. § 636(b)(1)(A).

II.    ANALYSIS

A.    Legal Standards

Fed. R. Civ. P. 26 (b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party."  Relevant information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26 (b)(1).  For the purpose of discovery, relevancy will be construed

2

broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. Daimler Chrysler, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351(1978)).  Discovery under Rule 26, however, is not an invitation to the proverbial fishing expedition.  The frequency or extent of the discovery methods otherwise permitted shall be limited by the court if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26 (b)(2).

This Court has broad discretion when deciding whether to compel discovery and may deny discovery to protect a party from oppression or undue burden. Fed. R. Civ. P. 26(c); Sattar v. Motorola, Inc., 138 F.3d 1164, 1171 (7th Cir. 1998) ("[D]istrict courts have broad discretion in matters related to discovery."); Gile v. United Airlines, Inc., 95 F.3d 492, 495-96 (7th Cir. 1996) ("The district court exercises significant discretion in ruling on a motion to compel.").  In ruling on a motion to compel, "a district court should independently determine the proper course of discovery based upon the arguments of the parties." Gile, 95 F.3d at 496.

     B.    Plaintiffs' Motion to Compel # 1

Plaintiffs' first motion to compel deals with two requests, headcounts and requests for information relating to surveys and focus groups performed by Fedex.

     1.    Headcounts

Twice a year, each Fedex terminal manager makes a written individual assessment on how each independent contractor feels about his status as an independent contractor rather than an employee.  The managers write short narratives explaining the reasons each individual favors being either an employee or independent contractor.  Managers also report signs of dissatisfaction with the independent contractor model.  Each independent contractor is identified by name on the headcount form.  The managers also can provide any other comments that they desire on the headcount forms.

Plaintiffs' request for production number 62 seeks all of the headcount documents.  Fedex complied and turned over the headcount documents, but Fedex redacted some of the information when they gave the headcount forms to Plaintiffs.  Fedex redacted some of the comments and the names of the headcount forms.  Plaintiffs' motion to compel focuses on this information, and Plaintiffs ask this Court to force Fedex to re-produce the headcount forms in an unredacted form.

Fedex, in its response, agrees to produce the redacted comments.  However, Fedex still refuses to produce the names of the individuals on the headcount forms.  Plaintiffs contend that they need the names of the individuals on the headcounts.  Plaintiffs argue that Fedex terminated certain employees who did not support the independent contractor model.  Consequently, if they can prove Fedex did terminate workers in this manner, then it suggests Fedex was treating the workers as employees in an at-will relationship rather than independent contractors.  However, without the names, Plaintiffs claim they will not be able to essentially "link-up" the terminated employees with the appropriate headcount forms to support this contention.

Fedex contends that Plaintiffs are merely trying to obtain new class members and are forcing their names into relevancy for discovery purposes contrary to Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978). This Court disagrees. Despite any relation to future class members, the names of the individuals on the headcounts may lead to potential witnesses. Those witnesses, whether part of a class or not, may provide testimony about their employment relationship with Fedex. That testimony directly bears on the issues pertinent to whether they were employees or independent contractors, which is the fulcrum issue in this case. Even if the names do not reveal evidence that Fedex singled out workers who did not support the independent contractor model as Plaintiffs suggest, they may conversely reveal the opposite to be true in that Fedex was not firing individuals because of their feelings about the independent contractor model. Either way, this information is relevant to the fulcrum issue because it either supports or contradicts the allegation that Fedex workers were employees. Plaintiffs are entitled to this evidence. Consequently, in accordance with Fed. R. Civ. P. 26(a)(1), the names may reasonably lead to relevant evidence. Absent some showing of privilege or undue prejudice, Fedex must turn over the names.

Fedex contends that there are privacy issues at stake. Fedex does not wish to disclose the information because some of it is sensitive and private. More specifically, some of the headcount forms have poor remarks made by current Fedex managers about current Fedex workers. Fedex claims that disclosing this information, the name of who the comments are about, may damage the working relationship between the Fedex managers and its workers. Also, Fedex told its managers to speak freely and candidly on the forms and that now disclosing the forms would betray Fedex's promise of confidentiality to its terminal managers.

5

While Fedex's concerns are legitimate, they do not carry enough weight to prevent disclosure pursuant to Fed. R. Civ.P. 26. Fedex's concerns of embarrassment and internal problems will be avoided if this information is designated as "confidential" in accordance with the current protective order. This procedure will protect Fedex's legitimate concerns regarding its working relationship with its workers and the trust of its managers while at the same time provide the Plaintiffs with the legitimate discovery they seek.

Plaintiffs' motion to compel the headcount names is **GRANTED**. However, Fedex may classify the documents as confidential to address its privacy concerns.

2.    Focus Group Surveys

From 2000 through 2004, Fedex contracted Scarlett Surveys International to conduct company attitude surveys (Scarlett Surveys) among its workforce. In 2005, though, Fedex apparently engaged a new firm, Luntz Maslensky Strategic Research. Plaintiffs request numbered 22 seeks to produce the results of these surveys.

Fedex represented in-court, that it was willing, and worked with Plaintiffs to disclose the Scarlett Surveys. However, Fedex refuses to produce the Luntz Survey because it is protected by the work-product privilege. This Court agrees.

The work product doctrine shields materials a party prepares in anticipation of litigation. Mattenson v. Baxter, 438 F.3d 763, 767-68 (7th Cir. 2006). The purpose of the privilege is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny and interference by an adversary. Hobley v. Burge, 433 F.3d 946, 949 (7th Cir. 2006). Fed. R. Civ. P. 26(b)(3) provides that materials that contain mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the

6

litigation are out of bounds and are only discoverable if the seeking party shows a substantial need and is unable to obtain the materials or their substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); <u>Mattenson</u>, 438 F.3d at 768.

This Court is persuaded that the Luntz survey is protected by the work-product privilege for the following reasons: first, Fedex counsel Robert Schwartz (Schwartz) filed an affidavit and stated in open court that the Luntz survey was commissioned, directed, supervised, and utilized by him for the sole purposes of this litigation, and second, the results were discussed only with members of the Fedex legal team.  Schwartz's statements do not merely constitute evidence that the Luntz survey was work product, but an oath that it was work product made by an officer of this Court.

Plaintiffs contend, though, that evidence exists that proves the Luntz survey was not work product.  Plaintiffs sole piece of evidence is an email by Rob Ostrov, Fedex's vice president of contractor relations, that they claim indicates the Luntz survey conducted for business purposes.  Plaintiffs argue this refutes Schwartz's statement that the Luntz survey was conducted purely for purposes of litigation.  Also, Plaintiffs argue that because the Scarlett surveys had been done for business purposes in the past, the Luntz survey was a part of Fedex's business practice of performing a business survey every year.  The only difference was this time it was with a different firm, Luntz.

Even though Fedex had conducted similar surveys in the past through Scarlett, that does not mean that the Luntz survey was for a business purpose and not performed in anticipation of litigation.  Absent some other evidence, this Court will not reach the conclusion Plaintiffs argue.

Plaintiffs offer some evidence, the Rob Ostrov email, in support of this argument, but it is unconvincing.  After reviewing the Ostrov email, it appears, at best, that it is merely a notice that the survey would be being conducted.  The email states:

> Beginning this week an independent consulting organization has been engaged to conduct a telephone and email survey of our independent contractors. This is an effort on our part to better understand issues of concern to our contractors.
> This survey is being conducted by an outside independent group to assure contractors of the privacy of their individual responses.  While we hope that contractors will agree to participate in this survey they are free to voluntar[i]ly [sic] participate or not as they so choose.
> FedEx is not selecting which contractors are going to be called or emailed. FedEx will also not be advised in any way of contractors who voluntarly agree to participate and those who choose not to.  No individual contractor information will [be] [sic] identified or provided to the company by this independent organization.

Plaintiff's Motion to Compel #1 Ex. F-1.  The email does not say Fedex is using this survey for any type of business purpose.  In fact the email even seems to disassociate Fedex from the survey.   The email does not clearly indicate the Luntz survey was being used for business purposes rather than for litigation.  Even when the email is viewed in conjunction with the fact that Fedex performed surveys in the past, it simply is insufficient to conclusively contradict the statement and affidavit by Schwartz that the survey was done for purposes of litigation.   At best, Plaintiffs have offered merely circumstantial evidence that suggests rather than proves that the Luntz survey was not commissioned purely for litigation purposes.

In summary, the Court is comfortable in concluding that the Luntz survey was commissioned by Fedex's counsel in anticipation of litigation.  Plaintiffs have failed to prove

otherwise and they have failed to make any showing of a substantial need for the Luntz survey.

Plaintiffs motion to compel the Luntz surveys is **DENIED**.[1]

C  Plaintiff's Motion to Compel # 2

Fedex provided to Plaintiffs a large variety of information where Fedex unilaterally

redacted various parts of that discovery.  In fact, counsel for both parties represented the

documents range in the hundreds or thousands.  The basis for Plaintiffs' second motion to

compel seeks to compel Fedex to re-produce all of the redacted documents in un-redacted form.

Plaintiffs do not provide any clear cut categories of redacted information that they seek to

compel.  However, several of the examples included addresses and phone numbers of Fedex

workers, names attached to electronic complaints in a Fedex suggestion box, and redactions

based on possible legitimate privileges such as those that pertain to taxes.

Generally, the Federal Rules provide no procedural device for unilateral redaction by a

party and it is a procedure that is not favored.  See Fed. R. Civ. P. 26(c) "(the court . . . may

make any order which justice requires to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." (emphasis added)).  Further, this

litigation has a protective order in place that prevents non-litigants from viewing sensitive

information.

Fedex contends that some of the information is simply not relevant, and in conjunction

with being not relevant, is protected by an expectation of privacy from any person's eyes.  For

example, Fedex claims some of the redacted information pertains to addresses of its employees.

---

[1]In their reply, Plaintiffs also make an argument that Schwartz committed an ethical violation that warrants disclosure of the discovery they seek.  However, because Plaintiffs raised this argument for the first time in their reply, this Court will not address this motion.  See Wright v. United States, 139 F.3d 551, 553 (7th Cir.1998) (argument not made in the initial brief is considered waived).

While Fedex does not assert any privacy interest of its own, it argues it redacted the information to protect the privacy interests of the Fedex worker who does have such an expectation. Further, Fedex argues that protective orders are not airtight and that leaks sometimes do and may occur.

This Court appreciates the confidentiality concerns Fedex has raised.  See e.g. Mattice v. Memorial Hospital, 203 F.R.D. 381, 386 (N.D. Ind. 2001).  Fedex's workers may have an interest in not having their home addresses, telephone numbers, names on their complaints, privileged tax information, or other information withheld from any person's eyes other than their own.  Some of this information may be irrelevant.  However, based on the representation of counsel, it appears the parties may be able to legitimately resolve this matter on their own.

Consequently, Plaintiffs' motion is **DENIED WITHOUT PREJUDICE**.  This Court **ORDERS** the parties to meet and confer and develop a procedure for redacting or withholding information that the parties agree is not relevant, protected by privacy interests, or subject to privilege.  For example, one procedure the parties may consider is to allow Plaintiffs counsel to view, but not use, all challenged redacted material.  If Plaintiffs' counsel agrees that the redacted material is not appropriate for discovery or of no value, the material may remain redacted.  On the other hand, if Plaintiffs' counsel disagrees with the redaction, Plaintiffs' counsel may then challenge Fedex's redaction in a specific and concrete manner.  If the parties cannot agree whether particular information is protected, then the parties may resubmit this issue to this Court for an in camera review of the particular matters.  Furthermore, because of the size of this litigation and the likely volume of material this Court will have to review, this Court may have to utilize the appointment of a special master pursuant to Fed. R. Civ. P. 53.  The party that loses the motion, then, will be forced to cover the costs associated with this procedure.

10

3.      Plaintiff's Motion to Compel #3

In Plaintiffs' third motion to compel, they seek various documents where they believe Fedex is improperly claiming redacted material is protected by the attorney client privilege. Plaintiffs' request is massive spanning approximately 8,000 pages and 2,500 documents.

This Court previously warned the parties in its March 24, 2006, order that the parties should pick their discovery battles carefully only after fully conferring in good faith to resolve the dispute before seeking court action, particularly because of the complexity and size of this multi-district litigation case.  However, after hearing the arguments of counsel and considering the evidence submitted by Plaintiffs, it appears that the parties have failed to abide by this Court's warning, and they have not properly met and conferred to resolve this dispute on their own before seeking court action.

Under Fed. R. Civ. P. 37 and Local Rule 37.1, when a party moves to compel disclosure of discovery "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person failing to make the discovery in an effort to secure the information or material without court action."[2]  Fed. R. Civ. P. 37(a)(2)(A).  The aggrieved party must attempt to confer with the unresponsive party in an attempt to obtain the desired material without court action.  8A Wright, Miller, and Marcus, Federal Practice and Procedure § 2285 (2d ed. 1994).  Furthermore, the movant must include "the date, time, and place of the conference or attempted conference and the names of all persons participating therein."  N.D.L.R. 37.1(a).  If the parties are unable to reach agreement on the disclosure of

---

[2]Plaintiffs did not provide the required certification when they filed their motion to compel.  However, they did file the certification on January 2, 2007.  Though belated, this Court will not deny Plaintiffs' motion on the technicality that the certification was not filed at the same time their motion was filed.  However, Plaintiffs are cautioned that failure to properly follow Fed. R. Civ. P. 37(a) in the future may result in adverse consequences.

discovery, they may seek court action to resolve the conflict.  Fed. R. Civ. P. 37(a).  However, it is not this Court's duty to become a third party to discovery disputes between the litigants.  <u>Levy Ind. Slag Co. v. Int'l Union of Operating Eng'rs</u>, 2006 WL 1765417 at 4 (N.D. Ind. 2006).

In the present case, Plaintiffs contend that they satisfied Local Rule 37.1(a) because they exchanged an email with Fedex, they discussed the issue numerous times at depositions with Fedex, and they had telephone conversations with Fedex counsel.  However, after examining the communications, this Court finds Plaintiffs and Fedex have not adequately met and conferred before Plaintiffs sought court action.

First, a single email sent by the Plaintiffs does not constitute an engagement in a conference to resolve the discovery dispute.  Fed. R. Civ. P. 37(a)  envisions a genuine two-way communication where the parties engage in a meaningful dialogue to resolve the issues without judicial intervention.  <u>See generally</u> <u>Shuffle Master Inc. v. Progressive Games, Inc.</u>, 170 F.R.D. 166, 171 (D.C. Nev. 1996).  One email message sent in each direction does not constitute meaningful discussion or serious negotiations to resolve the disputed discovery issue.  <u>Cf.</u> <u>Hoelzel v. First Select Corp.</u>, 214 F.R.D. 634 (D.C. Colo. 2003) (indicating a single email indicating that party was going to file a motion to compel did not satisfy the meet and confer requirement).  Email may be an appropriate means of communication to satisfy Fed. R. Civ. P. 37(a), but it is not appropriate in this case where the substance of the emails merely recite each parties' general stance on the issue rather than any type of bartering or negotiations.   Especially given the size of the request and the complexity of multi-district litigation.  This communication simply does not represent meaningful dialogue or show an attempt at a such dialogue to satisfy Fed. R. Civ. P. 37(a).

Similarly, discussions about the attorney-client privilege issue at depositions do not constitute the type of negotiations envisioned by Fed. R. Civ. P. 37(a).  Most of the "discussions" that Plaintiffs have submitted as evidence appear as objections.[3]  An objection at a deposition hardly constitutes a conference in which the parties engage in a meaningful discussion on how to resolve the issue.  At best, an objection is merely indicative of a party's general stance or attorney's belief that the material is protected by the attorney-client privilege. Furthermore, objections and discussions at depositions are often heated debates based on immediate emotions rather than an objective meeting specifically meant to resolve a conflict.  An objection and a disagreement with that objection by the questioning party are a far cry from a meet and confer contemplated by Fed. R. Civ. P. 37(a).

Finally, with regards to Plaintiffs' telephone communications with Fedex counsel, there is no evidence before this Court to determine the substance of those communications and whether they satisfy Fed. R. Civ. P. 37(a).  Plaintiffs' counsel submitted no written evidence and did not elaborate on the substance of the telephone conversations at the in-court hearing. Further, counsel for Fedex represented at the in-court hearing that Plaintiffs never gave them a meaningful opportunity to meet and confer.  Based on the other evidence before this Court, the lack of evidence to show the content of the telephone conversations, and the representation of

---

[3]See Plaintiffs' Ex. D , Deposition of Dennis Oates, at 102 (attorney objecting and  instructing witness not to answer because he feels it invades attorney-client privilege); Plaintiffs' Ex. E, Deposition of Severn McMurtry, at 32-33, 148, 208 (statements by witness that he cannot answer because of attorney-client privilege and objections by Plaintiffs' attorney because she believes attorney-client privilege applies); Plaintiffs' Ex. F, Deposition of David McIntyre, at 99-104 (attorney instructing witness not to answer and general discussion between attorneys whether the objection is appropriate); Plaintiffs' Ex. G, Deposition of Heather D' Alesandro, at 81-86 (witness refusing to answer question because it was protected by the attorney-client privilege and attorney objecting for the same reason).

Fedex's counsel at the in-court hearing, this Court can only assume the phone conversations were also not a meaningful attempt to confer and resolve the discovery issues.

Given the size and complexity of this litigation, Plaintiffs should have made better attempts to resolve this discovery dispute before seeking judicial intervention pursuant to Fed. R. Civ. P. 37(a).  The few communications that have taken place between Plaintiffs and Fedex could not reasonably resolve the attorney-client privilege issues with regards to all 8,000 pages of documents.  This Court feels it is very likely that the parties will resolve the attorney-client privilege issues or at least reduce the request to fewer than the 8,000 pages of documents Plaintiffs seek.  The representation of Fedex counsel of their willingness to resolve this dispute if they are given an opportunity to meet and confer reinforces this Court's belief.  Consequently, Plaintiff's motion to compel is **DENIED WITHOUT PREJUDICE**.

This Court **ORDERS** the parties to meet and confer in much greater detail with regards to the particular documents that are allegedly subject to the attorney-client privilege.  If the parties are still unable to agree whether certain documents, or all the documents, are protected by the attorney-client privilege, then Plaintiffs may re-file their motion.  However, Plaintiffs are cautioned that a large motion to compel, even a fraction of the size of their current request of 8,000 pages, will require this Court to utilize a special master in accordance with Fed. R. Civ. P. 53.  After the special master has made his review of the documents, this Court will issue its ruling and impose costs and possible sanctions upon the party that does not prevail.  The parties are warned that this process could result in a large and unnecessary expense to either or both Plaintiffs and Fedex.

**III.    CONCLUSION**

For the reasons stated, Plaintiffs' first motion to compel is **DENIED IN PART** and **GRANTED IN PART** [Doc. No. 327], Plaintiffs' second motion to compel is **DENIED WITHOUT PREJUDICE** [Doc. No. 389], and Plaintiff's third motion to compel is **DENIED WITHOUT PREJUDICE** [Doc. No. 394].

**SO ORDERED.**

Dated this 5th Day of January, 2007.

S/ChristopherA. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge